COMMONWEALTH of Kentucky, ex rel., Gregory D. STUMBO, Attorney General, Appellant,

v.

Greg CRUTCHFIELD, Appellee.

No. 2003–SC–0483–DG.

Supreme Court of Kentucky.

March 17, 2005.

Gregory D. Stumbo, Attorney General, Stuart W. Cobb, Assistant Attorney General, Civil & Environmental Law Division, Office of the Attorney General, Frankfort, Counsel for Appellant.

Winter Huff, Law Offices of John G. Prather, Somerset, Jeffrey S. Walther, Walther Roark Gay & Todd, PLC, Lexington, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

Appellee, Greg Crutchfield, was elected to the Garrard County Board of Education on November 7, 2000, and was administered the oath of office in January, 2001. Appellee's uncle was employed as a bus driver for the Garrard County School District at the time of Appellee's election.

Pursuant to KRS 160.180, the Office of the Attorney General initiated an ouster action against Appellee. KRS 160.180(2)(i) states in relevant part that, "No person shall be eligible to membership on a board of education ... who has a relative as defined in subsection (1) of this section employed by the school district and is elected after July 13, 1990." KRS 160.180(1) defines 'relative' as a father, mother, brother, sister, husband, wife, son, daughter, aunt, uncle, son-in-law, and daughter-in-law. Under the plain language of KRS 160.180, Appellee was disqualified from holding office.[1]

However, the Garrard Circuit Court denied the Attorney General's ouster petition on the parties' cross-motions for summary judgment and found for Appellee. The circuit court held that the statute was unconstitutional[2] because there is no rational basis for the difference in classification for aunts and uncles, but not nieces and nephews.[3] The circuit court noted our opinion in *Chapman v. Gorman*, 839 S.W.2d 232 (Ky.1992), but found that its holding did not prevent finding a specific provision of KRS 160.180 unconstitutional. The Court of Appeals affirmed. We granted discretionary review and reverse.

I.

The initial inquiry is to determine what standard of scrutiny applies when testing the constitutionality of KRS 160.180. *Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc.*, 261 Kan. 17, 927 P.2d 466

---

1. Another elected member of the Garrard County Board of Education, Gary Oliver, has a niece who is employed as a classified employee (office worker) in the Garrard County School District and he is not disqualified from office.

2. Although not directly at issue in the case at bar, the circuit court also held KRS 160.380(2)(f) unconstitutional under the same analysis.

3. The circuit court relied on the expert opinion of Dr. Stephan Wilson. Dr. Wilson testified via affidavit that the aunt/uncle and niece/nephew relationship is within the same degree of consanguinity and that there is no rational reason why such a distinction should be made when attempting to eliminate nepotism.

(1996). Governmental classifications that do not target suspect classes or groups or fundamental interests are subject only to rational basis review. *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). The challenged statute does not affect a suspect class. *Id.* It does not inflict injury to Appellee's right to candidacy, because no such constitutional status exists. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). Therefore, a rational basis test is the appropriate constitutional standard.

■ The United States Supreme Court in *Gulf, Colorado & Santa Fe Railway Co. v. Ellis,* 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897), first articulated the rational basis test under the Equal Protection Clause. The Court stated that, "it is not within the scope of the Fourteenth Amendment[4] to withhold from states the power of classification[.]" *Id.* at 155, 17 S.Ct. at 256. However, it must be based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification— and not a mere arbitrary selection. *Id.*

■ A person challenging a law upon equal protection grounds under the rational basis test has a very difficult task because a law must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). Under rational basis review, the section defining 'relative' in KRS 160.180 comes to us bearing a strong presumption of validity. *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). We will not invalidate on equal protection grounds legislation which we simply deem unwise or unartfully drawn. *Fritz, supra.* Despite the parties' arguments detailing the legislature's wisdom and purposes for drafting the definition of 'relative,' the General Assembly need not articulate its reasons for enacting the statute, and this is particularly true where the legislature must necessarily engage in a process of line drawing. *Fritz, supra,* at 179, 101 S.Ct. at 461. In fact, "[i]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. A legislative choice, under the rational basis test, will not be subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach, supra,* at 315, 113 S.Ct. at 2102. We will accept at face value contemporaneous declarations of governmental purposes, or in the absence thereof, rationales construed after the fact, unless our examination of circumstances forces us to conclude that they could not have been a goal of the classification. *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.,* 21 F.3d 237 (8th Cir.1994). Our General Assembly, under the Equal Protection Clause, has great latitude to enact legislation that may appear to affect similarly situated people differently. *Chapman, supra,* at 239 (*quoting Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982)).

■ Perhaps most important to note is that the legislature, "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Commonwealth v. Fulkerson,* 761 S.W.2d 631, 633 (Ky.App.1988) (*quoting Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 75

---

4. The Fourteenth Amendment provides in part, "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

S.Ct. 461, 99 L.Ed. 563 (1955)). Even though the General Assembly could have furthered the underlying purpose more completely, perhaps by including 'niece' and 'nephew' in the definition of relative, a conclusion that the method it chose is unconstitutional is not necessarily warranted.

■ The next step is to identify a legitimate government purpose which the enacting General Assembly could have been pursuing. *Haves v. City of Miami*, 52 F.3d 918 (11th Cir.1995). In this case, it is clear that the purpose of KRS 160.180 is to eliminate both the existence and the appearance of nepotism. In *Rose v. Council for Better Education, Inc.*, 790 S.W.2d 186 (Ky.1989), we declared that education is a basic fundamental right in Kentucky, guaranteed by Section 183 of the Kentucky Constitution.[5] We further stated that our schools shall be monitored by the General Assembly to ensure that they are operated with no waste, no duplication, no mismanagement, and with no political influence. *Id.* at 212–13. We noted that waste and mismanagement could include improper nepotism, favoritism and misallocation of school monies, and that if such inadequacies exist, they must be eliminated. *Id.* at 193. The General Assembly, in response to *Rose*, enacted the Kentucky Educational Reform Act (KERA) in 1990. KERA, in essence, was a policy decision by the General Assembly to restructure the state-wide educational system. Removing nepotism is a legitimate state interest. In addition, Appellant points out several conceivable reasons why the General Assembly would have excluded nieces and nephews in the definition of 'relative.' These include the need to retain young, qualified persons in rural Kentucky for employment and that nepotism in favor of aunts and uncles was a greater problem than nepotism in favor of nieces and nephews.

Lastly, we must ask whether a rational basis exists for the General Assembly to believe that the legislation would further the government purpose. *Haves, supra*, at 922. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational basis scrutiny. *Id.* at 922.

■ In this case, the inclusion of aunt/uncle in the definition of 'relative' undoubtedly furthers and rationally promotes the governmental goal of eliminating nepotism. We cannot say that the legislature was acting irrationally by not including niece/nephew in the definition of relative. When formulating the definition of 'relative,' the General Assembly had to draw the line somewhere. The General Assembly is under no constitutional obligation to craft perfectly sensible statutes. The classification need not be the least restrictive means of achieving a permissible end, nor must it be the fairest or best means that could have been used. *Robinson v. Marshall*, 66 F.3d 249 (9th Cir.1995). It is not the function of the courts to require enactment of better laws, so long as the tenets of the Equal Protection Clause are upheld. Many provisions in KERA, including KRS 160.180, serve to legislatively eliminate areas which were once fertile ground for favoritism and/or nepotism to take root. *Chapman, supra*, at 235. The structure of KRS 160.180 and its definition of 'relative' bears a rational relationship to the elimination of nepotism, and therefore satisfies constitutional scrutiny.

---

5. Section 183 provides that: "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the State."

Accordingly, the decision of the Court of Appeals is reversed and the case is remanded to the Garrard Circuit Court for entry of judgment consistent with this opinion.

All concur.