RENDERED: MARCH 7, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1025-MR


COMMONWEALTH OF KENTUCKY,
EX REL. ATTORNEY GENERAL
RUSSELL COLEMAN                                                          APPELLANT


|     | APPEAL FROM FRANKLIN CIRCUIT COURT |
| --- | --- |
| v.  | HONORABLE THOMAS D. WINGATE, JUDGE |
|     | ACTION NO. 23-CI-00343 |


KENTUCKY EDUCATION
ASSOCIATION; NICHOLAS
COUNTY EDUCATION
ASSOCIATION; DOUG BECHANAN;
AND JAMIE LINK                                                          APPELLEES

AND


NO. 2023-CA-1194-MR


DOUG BECHANAN, IN HIS
OFFICIAL CAPACITY AS
SUPERINTENDENT OF NICHOLAS
COUNTY SCHOOLS                                                   CROSS-APPELLANT


|     | CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT |
| --- | --- |
| v.  | HONORABLE THOMAS D. WINGATE, JUDGE |
|     | ACTION NO. 23-CI-00343 |

KENTUCKY EDUCATION
ASSOCIATION; NICHOLAS
COUNTY EDUCATION
ASSOCIATION; COMMONWEALTH
OF KENTUCKY, EX REL.
ATTORNEY GENERAL RUSSELL
COLEMAN; AND JAMIE LINK, IN
HIS OFFICIAL CAPACITY AS
SECRETARY OF THE EDUCATION
AND LABOR CABINETS                                    CROSS-APPELLEES

AND


NO. 2024-CA-0452-MR


COMMONWEALTH OF KENTUCKY
EX REL. ATTORNEY GENERAL
RUSSELL COLEMAN                                              APPELLANT



                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE BRIAN C. EDWARDS, JUDGE
                    ACTION NO. 23-CI-003628



SAULETTE DAVIS, INDIVIDUALLY
AND AS REPRESENTATIVE
RESPECTIVELY OF THE AMERICAN
FEDERATION OF STATE, COUNTY &
MUNICIPAL EMPLOYEES LOCAL
2629, AFL-CIO; JOHN STOVALL, AS
REPRESENTATIVE OF THE
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS LOCAL UNION 738;
ED DEVINE, AS REPRESENTATIVE
OF THE INTERNATIONAL
BROTHERHOOD OF ELECTRICAL

WORKERS LOCAL UNION 369;
ANDY BESHEAR, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
COMMONWEALTH OF KENTUCKY;
JAMIE LINK, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE
EDUCATION AND LABOR
CABINETS; AND
LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT                                                    APPELLEES


OPINION AFFIRMING IN PART, VACATING IN PART, AND
REMANDING ON APPEAL NOS. 2023-CA-1025-MR AND 2024-CA-0452-MR
AND REVERSING ON CROSS-APPEAL NO. 2023-CA-1194-MR

** ** ** ** **

BEFORE: CETRULO, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  The Appellant, Commonwealth of Kentucky, ex rel. Attorney

General Russell Coleman ("OAG"),[1] appeals the final orders of the Franklin

Circuit Court (Case No. 2023-CA-1025) and the Jefferson Circuit Court (Case No.

2024-CA-0452) which both determined that an exemption within 2023 Senate Bill

7 ("SB 7") violates equal protection[2] guarantees of the Kentucky Constitution.

Both circuit courts permanently enjoined SB 7 in its entirety without specification

---

[1] Office of the Attorney General of Kentucky representing the Commonwealth.

[2] There may be a tendency in Kentucky law to conflate to some degree the sometimes-related issues of arbitrary actions prohibited by Section 2 of the Kentucky Constitution with the promise of equal protection of the law which overlaps through the first three sections of the Kentucky Constitution.  We will confine our analysis to an equal protection claim.

of who and what was enjoined.  Cross-Appellant, Doug Bechanan, in his official capacity as Superintendent of Nicholas County Schools ("Superintendent") filed a cross-appeal challenging the Franklin Circuit Court's determination that venue for the Superintendent was proper in Franklin County.

These cases present three[3] questions we must answer.  We will answer the questions in the following order.  Was the venue proper for the Superintendent in Franklin County?  Does the exemption within SB 7 violate the principles of equal protection of the law under Sections 1, 2, or 3 of the Kentucky Constitution?  If so, was the injunction issued overly broad because those enjoined and the acts enjoined were not specified?

We have carefully examined the records of these cases and fully considered both the written and oral arguments made by the respective parties.  We have engaged in lengthy deliberation about the issues presented.  We reverse the determination of venue for the Superintendent.  We affirm the conclusions of the Jefferson and Franklin Circuit Courts that the exemption for certain labor organizations within SB 7 on its face violates provisions of the Kentucky

---

[3] While the OAG raised other issues in its prehearing statements filed with this Court, including standing and severability, the OAG did not address these issues in its brief and thus abandoned and waived them. *CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 88 (Ky. 2010). *See Milby v. Mears*, 580 S.W.2d 724 (Ky. App. 1979).

Constitution requiring equal protection of the law. We vacate only to direct modification of the overly broad injunction language used by the circuit courts.

## FACTUAL AND PROCEDURAL HISTORY

During its 2023 regular session, members of the Kentucky General Assembly (the "Legislature") introduced SB 7 and House Bill 364 ("HB 364"). HB 364 as first introduced would prohibit all public employers from deducting from an employee's wages membership dues for any "labor organization."[4] SB 7 as first introduced would have prohibited all public employers from deducting amounts from an employee's wages that were to be spent on "political activities" through labor organizations but allowed public employers to deduct membership dues from employees' wages. Each bill provided penalties for violation of its provisions. SB 7 contained an emergency[5] provision.

---

[4] In typical conversations, labor organizations are generally understood to mean mostly "unions." Because the broader statutorily defined phrase of labor organization is used in the legislation, we will also use that phrase in our discussion.

[5] Generally, laws go into effect ninety days after the Legislature has adjourned the session at which the law was passed. But, if an emergency is declared, the law may take effect immediately. The validity of the emergency provision in SB 7 was initially an issue. The injunctions entered effectively rendered the emergency provision moot. No party has raised the emergency provision as an issue for these appeals.

Section 55 of the Kentucky Constitution allows the Legislature to make laws effective immediately only if "reasons" are stated "at length," which are usually stated within the bill itself. The only statement for the emergency in SB 7 was "*a compelling and immediate interest* in avoiding the appearance that public resources are being used to support partisan political activity." (Emphasis added.) Whether such a statement satisfies the constitutional command of Section 55 remains for a future case. *Compare American Insurance Association v. Geary*, 635

SB 7 passed the Senate and moved to the House. House Committee Substitute 1 combined the various portions of SB 7 and HB 364. Significantly, this amended version included an added exemption for the benefit of some labor organizations. This exemption is the primary subject of these appeals. This became the final version of the bill that passed both houses of the Legislature in mid-March. The Governor vetoed the bill, but both the Senate and the House overrode the veto on March 29, 2023. Because of the emergency provision, the legislation took effect on that date.

The only stated purpose of the final version of SB 7 was to avoid "the appearance that public resources are being used to support partisan political activity[.]" SB 7, Section 9. To further this goal, the law prohibits public employers from allowing *most* employees to use payroll deductions to pay dues to labor organizations or to make contributions for political activities, such as through contributions to political committees connected to labor organizations. But Section 1(10) of SB 7 exempted labor organizations "which primarily represent public employees working in the protective vocations of active law enforcement officer,

S.W.2d 306 (Ky. 1982), *with McIntyre v. Commonwealth*, 297 S.W. 931 (Ky. 1927), *overruled on other grounds in D & W Auto Supply v. Department of Revenue*, 602 S.W.2d 420 (Ky. 1980).

jail and corrections officer, or active fire suppression or prevention personnel." KRS[6] 336.180(10).

Section 3 of SB 7 created a new section of KRS Chapter 336. KRS 336.133 now prohibits public employers from assisting "directly or indirectly, any labor organization, person, or other legal entity with the collection of dues, fees, assessments, or other charges, or political activities or personal information related to those activities."[7] SB 7 provides a mandatory civil penalty ranging from $100 to $1,000 for each violation of this new statute. KRS 336.990(2)(e).

On April 17, 2023, the Kentucky Education Association and the Nicholas County Education Association (collectively "KEA"[8]) filed a civil action in the Franklin Circuit Court, challenging the constitutionality of SB 7 under Sections 2 and 3 of the Kentucky Constitution. They alleged that the distinction between those labor organizations consisting primarily of employees in "protective vocations" and all other unions is arbitrary and a violation of equal protection

---

[6] Kentucky Revised Statutes.

[7] Because of our resolution of this case on the grounds primarily asserted, we need not decide the overbreadth argument related to this provision. Still, we feel compelled to note the obvious and clearly unintended impact of this provision. As it literally reads, payroll deductions for insurance and retirement plans violate this law and subject everyone involved to penalties for each such act. Had we any doubt about the abandoned severability argument, this provision would weigh heavily in a decision as to whether SB 7 could be salvaged by severing unconstitutional provisions.

[8] Because the Nicholas County Education Association is a local affiliate of the KEA, we will refer to them collectively.

under Sections 2 and 3 the Kentucky Constitution.[9]  They requested an injunction against the enforcement of the bill.

They initially filed suit against Jamie Link, in his official capacity as Secretary of the Education and Labor Cabinet, and against the "Nicholas County Schools."  The OAG intervened to defend the constitutionality of the statute.  The Commonwealth, via the OAG, effectively became the primary defendant.

Nicholas County appears to have been chosen as a representative for the effects of enforcement of SB 7.  KEA also wanted to insure standing by adding this more local and directly affected party.  When SB 7 became law, the Superintendent sent a memo indicating that paycheck deductions would cease immediately.  Recognizing an issue with naming the "schools" [10] rather than a specific governmental entity or individuals, the Superintendent was substituted for the "schools."  The Superintendent continued the argument made by an initial motion to dismiss that venue for Nicholas County defendants was improper in Franklin County.

---

[9] No Plaintiff below and now Appellee in this Court asserted the application of the federal Equal Protection Clause through the Fourteenth Amendment to the United States Constitution.

[10] The "Nicholas County Schools" is not a legal entity which can be sued.  A school district may be sued only by naming its board members. *Nelson Cnty. Bd. of Educ. v. Forte*, 337 S.W.3d 617, 625 (Ky. 2011), *superseded by rule on other grounds as recognized in Mahl v. Mahl*, 671 S.W.3d 140 (Ky. 2023).

Both sides filed competing motions for summary judgment in June 2023. The circuit court heard oral arguments in August 2023 and issued its Opinion and Order on August 30, 2023. In this Order, the Franklin Circuit Court held that Franklin County was the proper venue for all parties. The circuit court granted summary judgment to the KEA. The circuit court determined that SB 7 violated Sections 2 and 3 of the Kentucky Constitution, as the classification exempting some labor organizations lacks a rational basis to withstand an equal protection challenge. The Franklin Circuit Court therefore permanently enjoined the entirety of SB 7.

In Jefferson County, the Plaintiff labor organizations and individual members brought a similar suit, naming the Governor and Secretary Link[11] as Defendants. The Jefferson County Plaintiffs argued the invalidity of SB 7 on the same primary ground of an equal protection violation. The decision of the Franklin Circuit Court preceded that of Jefferson County. Ultimately, the Jefferson Circuit Court agreed with the primary ground of an equal protection violation and, like the Franklin Circuit Court, declined to decide other constitutional claims. These appeals followed and have been combined for this one Opinion.

---

[11] In both cases, Secretary Link was dismissed without prejudice on the conditions that he would not attempt to enforce the terms of SB 7 while the litigation was pending and would obey any final order of the court.

## STANDARD OF REVIEW

This case involves a facial challenge to the constitutionality of a law under the Kentucky Constitution. "In reviewing the constitutionality of a statute, we apply a *de novo* standard of review." *S.W. v. S.W.M.*, 647 S.W.3d 866, 873 (Ky. App. 2022) (internal quotation marks omitted). "In considering an attack on the constitutionality of legislation, this Court has continually resolved any doubt in favor of constitutionality rather than unconstitutionality." *Id.* (citing *Hallahan v. Mittlebeeler*, 373 S.W.2d 726, 727 (Ky. 1963)). We will discuss additional aspects of constitutional review in our analysis to follow.

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

As this case presents legal questions rather than disputed facts, summary judgment was appropriate. The facts necessary to determine proper venue, based on the Superintendent's status as a state officer, state official, or public servant, are not disputed. The proper venue then is determined as a matter of law, and our review is again *de novo*. *See O'Bannon v. Allen*, 337 S.W.3d 662, 664 (Ky. 2011).

As we apply these standards of review in the following analysis, we will begin and end with procedural issues, in part because they are connected as we explain the effect of our decision. We begin with the proper venue for the named parties. We will end with the proper scope of any injunction.

## ANALYSIS

### VENUE FOR THE SUPERINTENDENT WAS NOT PROPER IN FRANKLIN COUNTY

We first decide the question of venue[12] for the Superintendent before addressing the validity of the act applied to him in his official capacity. The Superintendent argues that venue as to him was improper, as he neither lives in nor is employed in Franklin County. We agree.

---

[12] To some extent, the Superintendent appears to argue a lack of personal jurisdiction. As he is a Kentucky citizen and the case is about his actions in Kentucky, there is no question of personal jurisdiction. The circuit court generally, regardless of its division into individual circuits, has jurisdiction over any Kentucky citizen. The issue is venue.

-11-

This case does not involve a typical suit involving a school district, such as a dispute between a teacher and his or her employer. We do not question the long-standing general rule that a school district must be sued in the county where it is located. *Pendleton County Board of Education v. Simpson*, 91 S.W.2d 557, 560 (Ky. 1936). In contrast, this case involves a constitutional challenge to a statute.

In KRS 452.005, the Legislature has provided specific rules for the venue of constitutional challenges. Before delving into the application of KRS 452.005 to this case, we should first discuss how the Legislature had recently and unsuccessfully attempted to change venue for constitutional challenges by amendment to that statute. This was an issue while these cases were pending with the circuit courts, but it is no longer an issue.

The unsuccessful amendment to KRS 452.005 added a new subsection creating a process for constitutional challenges to start in one county (frequently Franklin County) but then to be randomly transferred to some other circuit court anywhere in the state on the request of a party. While this case was pending, this provision was invalidated as a violation of constitutional separation of powers. *See Arkk Properties, LLC v. Cameron*, 681 S.W.3d 133 (Ky. 2023) (As constructed, the statute attempted to control disqualification of judges and changes of venue, which are matters for the judicial branch to govern.).

The relevant provisions of KRS 452.005(1) and (2), which were not impacted by the *Arkk* decision, state:

(1) Except as provided in KRS 5.005 and 286.12-135, and notwithstanding any other statute to the contrary, the venue for any civil action that:

(a) Challenges the constitutionality of a Kentucky:

1. Statute;

2. Executive order;

3. Administrative regulation; or

4. Order of any cabinet, program cabinet, or department established under KRS Chapter 12;

(b) Includes a claim for declaratory judgment or injunctive relief; and

(c) Is brought individually, jointly, or severally against:

1. Any state official or state officer in his or her official capacity, including any public servant as defined in KRS 11A.010;

2. Any body, subdivision, caucus, committee, or member of the General Assembly, or the Legislative Research Commission; or

3. Any agency of the state as defined in KRS 11A.010;

shall be as provided in this section and KRS 452.010 and KRS 452.030.

(2) (a) A plaintiff who is a resident of Kentucky shall file a complaint or petition in the office of the Circuit Court clerk in the county where the plaintiff resides. If more than one (1) plaintiff is a party to the action, the complaint or petition may be filed in any county where any plaintiff resides.

Looking first at the plaintiff side of these cases, KEA is headquartered in Frankfort. No one challenges the correct application of KRS 452.005(2)(a) makes venue proper because KEA is one of the Plaintiffs in the Franklin County case. In the Jefferson County case, at least one of the individual Plaintiffs resides in that county, and at least one of the labor organizations is headquartered in that county. The venue for the Plaintiffs was proper in both cases. The cases also clearly satisfy section (1)(a)1. and (b), as the suits both challenge the constitutionality of SB 7 and seek a declaration of rights and injunctive relief.

The question then becomes whether KRS 452.005(1)(c) is satisfied. The wording of this subsection speaks of defendants as individuals, whether relief is sought individually, jointly, or severally. While KRS 452.005(2)(a) permits venue if any plaintiff satisfies the statute, such language is not repeated in KRS 452.005(1)(c).

-14-

KRS 452.005(1)(c) partly[13] borrows definitions from KRS 11A.010, the definition section for a law requiring a code of ethics for the executive branch of our state government. In doing so, the Legislature indicated an intention to limit this statute to those in the executive branch. We see this in application. Under this definition, Secretary Link is a state officer. KRS 11A.010(7)(a). The Governor and the Attorney General are public servants as defined. KRS 11A.010(9)(a), (d). The venue for each Defendant in the Jefferson County case thus was proper.

Moving to the Franklin County case, we reject the argument that the Superintendent is a state officer under KRS 452.005(1)(c) without reference to the additional language defining public servants in that statute. Superintendents are officers of the school districts which employ them. They are not employed by the "state" so as to make them state officers as intended by KRS 452.005(1)(c)1.

The statute borrowed in the venue statute broadens its coverage to further define public servants as "[a]ll employees in the executive branch including officers as defined in subsection (7) of this section and merit employees." KRS 11A.010(9)(h). This is the only possible basis for the venue for the Superintendent because the Superintendent does not fit the statutory definition of state officer under the borrowed statute.

---

[11] No specific definition of "state official" is provided.

School districts are institutions mandated by Section 183 of the Kentucky Constitution, although, as the Superintendent has pointed out, this does not mean that all laws impacting state agencies specifically apply to school districts. *See Board of Education of Russellville Independent Schools v. Logan Aluminum*, 764 S.W.2d 75 (Ky. 1989) (definition of state agencies in statute creating tax appeals board does not include school districts). School districts are not agencies within the executive branch as defined by KRS 11A.010(10).

While the Superintendent is a public servant as that term is generally understood, he is not an employee within the executive branch of state government which the Legislature intended to include under KRS 452.005(1)(c) and as extended by KRS 11A.010(9)(h). As we will explain at the conclusion of this Opinion, this should not cause any angst about potential disregard of an injunction.

We are aware that a proper venue for individual defendants can present challenges for cases involving multiple defendants. *See, e.g.*, *Copass v. Monroe County Medical Foundation, Inc.*, 900 S.W.2d 617 (Ky. App. 1995). As we shall see when we conclude this Opinion, this question of venue for the Superintendent is largely academic. The presence of the Superintendent as even a nominal party was not necessary. With constitutional challenges, it is not required nor practical to name as a party everyone who might be impacted.

The circuit court in any venue in Kentucky has the authority to enjoin the enforcement of an unconstitutional law on a statewide basis. *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 162-64 (Ky. 2009). The Legislature recognized this with its effort to move cases out of Frankfort, which was frustrated by the Kentucky Constitution as explained in *Arkk*. This does not mean that injunctive relief should not specify its application to the people who apply and enforce the law. We will return to this issue as we conclude this Opinion.

**THE KENTUCKY CONSTITUTION PROVIDES
A DIFFERENT LEVEL OF PROTECTION
FROM THE FEDERAL CONSTITUTION**

Sometimes the protection provided by our state constitution is the same as that provided in the federal constitution. But in our federal system, the individual states have the option to provide more protection for their respective citizens. The federal constitution as applied through the Fourteenth Amendment acts as the floor. States may reach higher, and Kentucky has done so in some areas. *Elk Horn Coal Corp. v. Cheyenne Resources, Inc.*, 163 S.W. 3d 408, 417-18 (Ky. 2005), *overruled on other grounds by Calloway County Sheriff's Department v. Woodall*, 607 S.W.3d 557 (Ky. 2020) (clarifying that review under Kentucky's equal protection provisions should not be combined with analysis of the state constitutional prohibition against special or local legislation).

The Kentucky Supreme Court has decided that the Kentucky Constitution does not provide additional protection in other areas. For example, the Kentucky standards for search and seizure law are the same as those under the federal constitution. *Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022). Kentucky has not provided a higher level of protection for First Amendment freedoms of speech and of the press. *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 894 (Ky. 1981). More recently, Kentucky recognized no greater protection of religious freedom under the Kentucky Constitution. *Gingrich v. Commonwealth*, 382 S.W.3d 835, 839-40 (Ky. 2012).

As to the governing issue in this case, the Kentucky Constitution provides more protection than its federal equivalent. Kentucky provides its citizens with a higher level of equal protection in the application of the law. *Elk Horn Coal Corp.*, *supra*. *See also Commonwealth v. Wasson*, 842 S.W.2d 487 (Ky. 1992), *overruled on other grounds by Calloway County Sheriff's Department*, 607 S.W.3d 557.

We proceed next to the primary question of equal protection under the Kentucky Constitution. Before we do so, we note the information provided and arguments made by the parties about political partisanship as the motivation for SB 7. We state this plainly: that is irrelevant.

One of the cases cited by the OAG is *Wisconsin Education Association Council v. Walker*, 705 F.3d 640 (7th Cir. 2013). This case addressed similar legislation under the federal constitution. The opinion gives short shrift to any constitutional challenge to the payroll deduction limitations, summarily disposing of them in less than a page in a lengthy opinion.

While not particularly helpful to our analysis under the Kentucky Constitution, *Walker* does quote from another Seventh Circuit decision which will help us to keep our focus as we continue our analysis. The Seventh Circuit said it better than we can:

> [T]here is no rule whereby legislation that otherwise passes the proper level of scrutiny . . . becomes constitutionally defective because one of the reasons the legislators voted for it was to punish those who opposed them during an election campaign. Indeed, one might think that this is what election campaigns are all about: candidates run on a certain platform, political promises made in the campaign are kept (sometimes), and the winners get to write the laws.

*Hearne v. Board of Education*, 185 F.3d 770, 775 (7th Cir. 1999). *Hearne* also provides us with a segue into the proper level of scrutiny as we apply the Kentucky Constitution.

**SB 7 VIOLATES SECTIONS 1, 2, AND 3
OF THE KENTUCKY CONSTITUTION**

"All men[14] are, by nature, free and equal . . . ." KY. CONST. Section 1. "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."[15] KY. CONST. Section 2. "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services. . . ." KY. CONST. Section 3.

Section 3 is the oldest continuous provision in the Kentucky Constitution. It is in all four of Kentucky's Constitutions.[16] While we have recognized that corporate entities are entitled to equal protection, we should not lose sight that the focus of Section 3 is on people. The Appellees complain of disparate, politically motivated treatment of labor organizations, but ultimately it is

---

[14] Unlike prior versions of Kentucky's Constitution, we no longer distinguish between "freemen" and those enslaved. Even before women had the right to vote, Kentucky courts recognized that women and corporate entities were entitled to equal protection. *Carrithers v. City of Shelbyville*, 104 S.W. 744, 745 (Ky. 1907).

[15] We take judicial notice of the current composition of the Legislature. Of the 100 representatives, 80 are Republicans, and 20 are Democrats. Of the 38 senators, 31 are Republicans, and 7 are Democrats.

[16] The essential wording of this section appears in Article XII, Section 1, of the First Constitution of Kentucky (1792), Article X, Section 1, of the Second Constitution of Kentucky (1799), and Article XIII, Section 1, of the Third Constitution of Kentucky (1850). Its position shifted from first to third in the listing of rights in the present Constitution.

the inexplicable different treatment of individuals which most clearly illustrates the equal protection violation in this case.

We have the benefit of a relatively recent decision by the Kentucky Supreme Court addressing an equal protection challenge raised by labor organizations. *Zuckerman v. Bevin*, 565 S.W.3d 580 (Ky. 2018). By a four-to-three decision, the Kentucky Supreme Court found no equal protection violation in legislation protecting a right to work without membership in a labor organization.

As in *Zuckerman*, the legislative regulation at issue here, payroll deduction policies, is a matter of social or economic policy. It does not involve any suspect class requiring strict scrutiny or a similar heightened level of review. Rather, the question is whether there is any rational basis for the different treatment of individuals. *Id*. at 595. All parties in these cases agree that rational basis is the proper level of review.

Quoting from earlier cases, the Court in *Zuckerman* explained that rational-basis review does not give courts a license to judge the wisdom or fairness of choices made by the Legislature. The courts may not act as a "superlegislature." *Id*. at 596. By the same logic, the Legislature may not act as a "supercourt" deciding what the Kentucky Constitution prohibits. These lines are drawn by the separation of powers provisions in our Constitution in the attempt by the framers to achieve balance among three separate and equal branches of government.

The law upheld in *Zuckerman* left in place the paycheck deduction of dues owing to a labor organization, so long as the employee gave written or electronic authorization for the deduction. The option of paycheck deduction had been statutorily authorized for over fifty years. *See Clevinger v. Board of Educ. of Pike County*, 789 S.W.2d 5 (Ky. 1990) (applying pre-SB 7 statutes which permitted paycheck deductions since 1972). But this allowance was eliminated for *some* people by the passage of SB 7.

SB 7 prohibits most public employees from directly deducting from their paychecks any dues to be paid to a labor organization. It also prohibits public employers from assisting in any way with the collection of dues for labor organizations. Again, these prohibitions explicitly exclude labor organizations "which primarily represent public employees working in the protective vocations of active law enforcement officer, jail and corrections officer, or active fire suppression or prevention personnel." KRS 336.180(10) (Section 1(10) of SB 7).

Although nowhere stated in SB 7, the OAG argues that the purpose of the exception is to provide a convenience to those public employees who work in a "protective" vocation. KEA challenges the constitutionality of SB 7, alleging that disparate treatment between labor organizations composed of a majority of protective vocation employees and all other labor organizations, which may also include members of the protective vocations, is a violation of equal protection.

To repeat, "our analysis begins with the presumption that legislative acts are constitutional." *Zuckerman*, *supra*, at 595. "A classification by the legislature should be affirmed unless it is positively shown that the classification is so arbitrary and capricious as to be hostile, oppressive and utterly devoid of rational basis." *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 19 (Ky. 1985). "[A] statute does not have to be perfect to pass constitutional muster." *Cornelison v. Commonwealth*, 52 S.W.3d 570, 573 (Ky. 2001).

> Citizens of Kentucky enjoy equal protection of the law under the 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution. Simply put, the 14th Amendment requires persons who are similarly situated to be treated alike. And Sections 1, 2, and 3 of the Kentucky Constitution also provide that the legislature does not have arbitrary power and shall treat similarly situated persons equally.

> In sum, the goal of the 14th Amendment to the United States Constitution, as well as Sections 1, 2, and 3 of the Kentucky Constitution, is to keep governmental decision makers from treating differently persons who are in all relevant respects alike.

*Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 465 (Ky. 2011) (internal quotation marks and citations omitted). "[T]he rational basis standard, while deferential, is certainly not demure." *Id*. at 469.

The circuit courts concluded that SB 7's distinction between those labor organizations primarily representing employees in protective vocations and

-23-

all other labor organizations representing other public employees lacked a rational basis. It likened this distinction to the act struck down in *Burrow v. Kapfhammer*, 145 S.W.2d 1067 (Ky. 1940), finding an arbitrary classification between groups that were performing the same services but were being treated differently under the law. We need not rely solely on an eighty-five-year-old case given the development of equal protection jurisprudence in recent decades. Although our analysis may at some points differ from that of the circuit courts, we agree with their ultimate conclusions.

While any conceivable rational basis will do, "we must ask whether a rational basis exists for the General Assembly to believe that the legislation would further the government purpose." *Commonwealth ex rel. Stumbo v. Crutchfield*, 157 S.W.3d 621, 625 (Ky. 2005). In this instance, the exception allowed by SB 7 is in direct opposition to the stated purpose of SB 7. The language of SB 7 states that its purpose is to avoid the appearance that public resources are being used to support partisan political activity, and the OAG offers no different purpose, even though we realize that the OAG has no burden to identify and explain any rational basis.

Allowing an exception for some labor organizations with majorities of a certain type of employee does the exact opposite of the only stated purpose – it creates an appearance of favoritism for some labor organizations over others

-24-

because of partisan political activity even at the expense of individual protective vocation employees, who may or may not get the benefit of the exemption. Without question, the Legislature could have disallowed payroll deductions to everyone because the state has no obligation to facilitate political speech. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 129 S. Ct. 1093, 172 L. Ed. 2d 770 (2009). But favoring some speech and facilitating it alone may present a different constitutional question in the form of First Amendment viewpoint discrimination, which we need not reach in our equal protection analysis.

The Plaintiffs in the Jefferson County case properly developed the record to show the disparate treatment of individuals under SB 7. Eddie Crutcher is a Court Process Officer with the Metro Auxiliary Police Force. He is a peace officer with arrest authority and carries a weapon. He works daily in the juvenile court system. Yet he is not considered by SB 7 to be in a protective vocation like other police officers because he happens to be a member of a labor organization not primarily composed of police officers as defined.

On the other side of the equation, people in nonprotective vocations are exempted if they happen to be members of a labor organization composed primarily of people in protective organizations. Clerical employees of fire departments, who do not themselves engage in protective or hazardous work like their firefighter co-workers, none-the-less get to use payroll deduction. We will

not unnecessarily lengthen this Opinion with other examples on both sides of the line drawn by SB 7.

The OAG insists that the line drawn here is valid because the Legislature has validly drawn similar lines before. For example, in KRS 61.592 retirement benefits are impacted by performing hazardous work. But everyone who performs such work gets this enhanced retirement benefit regardless of what labor organization to which they may belong.

The OAG explains that protective vocations are basically the same vocations involving hazardous work. Yet emergency medical personnel perform hazardous work and are entitled to increased retirement consideration under KRS 61.592, but they did not make the list of protective vocations. They are a protective vocation under any reasonable application of the phrase because they serve in dangerous situations to tend to those who have been often gravely injured. If the only reason for the difference is the political tendencies of whatever labor organization such employees may join, then it is hard to see the line drawn as anything but arbitrary and in violation of equal protection of the law for the employees.

Undaunted, the OAG insists that over-inclusiveness or under-inclusiveness because of lines drawn is not a problem. Under-inclusiveness alone has been held insufficient, but only when the line drawn still had a rational basis.

*Holbrook v. Lexmark Intern. Group, Inc.*, 65 S.W.3d 908, 915-16 (Ky. 2001) (rational basis for the line drawn to distinguish what notice is required for a permanent injury claim between those off work for seven days and those who never missed work).

In the present case, the exemption is both inexplicably underinclusive and overinclusive. While not alone necessarily fatal, this imprecision in the line drawn, when considered in the context of the government goal stated, is problematic for the OAG's position. Inability to explain inclusiveness may lead to the conclusion that the lines have been drawn for the purpose of invidious discrimination rather than because of the need to draw a rational line. *See Parker v. Webster Co. Coal*, 529 S.W.3d 759, 769 (Ky. 2017), *superseded by statute on other grounds as noted by Cates v. Kroger*, 627 S.W.3d 864 (Ky. 2021).

Because the OAG has relied upon them, we have considered two cases which both have to do with equal protection in the context of anti-nepotism laws. We note that both cases apply only the federal constitution equal protection clause. In *Crutchfield*, *supra*, the Court rejected an equal protection complaint because the prohibition of having school board members with certain relatives employed by the school district had a rational basis. The complaint was that it should not be acceptable to have a niece or nephew employed but not aunts and uncles.

But a rational basis could be articulated for this distinction. The Legislature may have decided to attack the problem in this way because of the need to have younger more qualified people in the system and because the employment of aunts and uncles was a more prevalent problem. *Id*. at 625. Applying the same definition of "relative," the Court in *Chapman v. Gorman*, 839 S.W.2d 232 (Ky. 1992), upheld a prohibition of a superintendent employing a relative of a board member.

As in some other cases finding an equal protection violation, SB 7 acts through a definitional section of the statute. Care is required in drawing definitional lines across groups of people. But a perhaps overlooked problem with SB 7 is that, unlike *Crutchfield* and similar cases, there was no *necessity* to engage in line drawing. *Crutchfield*, *supra*, at 624.

To fight the battle against nepotism required a line to be drawn. Would it be at the first level of consanguinity or more attenuated? Would it stop at aunts and uncles or continue to second cousins? Any problem with the use of payroll deduction to further political agendas needed no line drawn. The original versions of SB 7 and its subsumed House Bill 264 recognized this.

The line drawn by the Legislature in SB 7 is drawn in such a way to include protective vocation employees and other employees on *both* sides of the line. The exemption in SB 7 was supposed to give identified groups of employees

the right to use payroll deductions, but it does not do so. It favors some labor organizations and disfavors others for no rational reason when we consider the subject of the law relates to the right of individual employees to use payroll deductions.

The Missouri Supreme Court recently struck down similar legislation in which "public safety labor organizations" were exempted from several new requirements otherwise required of labor organizations for those employed by a public body. *See Missouri Nat'l Educ. Ass'n v. Missouri Dep't of Lab. & Indus. Rels.*, 623 S.W.3d 585 (Mo. 2021). While this opinion is not binding on this Court, we find their analysis persuasive and applicable to the facts at hand.

> Under rational basis review, the party challenging the constitutional validity of the statute must overcome the presumption the statute has a rational basis "by a clear showing of arbitrariness and irrationality." *Cosby v. Treasurer of State*, 579 S.W.3d 202, 209 (Mo banc. 2019) (citation omitted). The Labor Unions have met that burden. Each of the State's proffered rational bases concerns public safety *employees* and the important work they perform. Whether these might have sufficed had the exemption at issue protected public safety employees is not at issue, for it exempts only public safety *labor organizations*.
>
> HB 1413 defines public safety labor organizations as those labor organizations which "primarily" – but not necessarily exclusively – represent public safety employees. Section 105.503.2(1). Accordingly, by definition, public safety labor organizations are not limited to public safety employees, nor do public safety labor organizations encompass representation of all

public safety employees. As a result, HB 1413's public safety labor organization exemption does not apply to only or all public safety employees involved in collective bargaining. Public safety employees represented by labor organizations that "primarily" represent other types of employees will not be protected by HB 1413's exemption. Rather, public safety employees will benefit from the exemption only so long as the labor organization that represents them "primarily" represents public safety employees. As a result, despite the State's arguments to the contrary, the type of labor organization, not the type of employee, creates the basis for the exemption.

*Id.* at 592.

The same analysis used by the Missouri Supreme Court applies to the legislation challenged here. The Court further stated the "defects make it unnecessary to address the Labor Unions' other arguments for, in themselves, they demonstrate each of the State's asserted rational bases is neither rational nor an apparent basis for the provision. Instead, the only effect (and, therefore, the only evident purpose) of the exemption for public safety labor organizations is to give preferential treatment to some labor organizations over others for some reason other than those employees they represent. Accordingly, this exemption violates equal protection and is invalid on that ground." *Id.* at 593.

The OAG still argues that other Kentucky laws allow disparate treatment, such as previously discussed retirement provisions for employees in hazardous as opposed to non-hazardous vocations. However, "one type of

-30-

disparate treatment does not constitute a rational basis or substantial and justifiable reason for another form of disparate treatment." *Gardner*, *supra*, at 473. "In considering an equal protection challenge, a court does not engage in accounting of debits and credits; rather, the court must examine whether similarly situated individuals have been treated differently in that instance and, if so, whether or not such treatment is rationally related to a legitimate state interest. And, as we noted above, a classification upheld for one purpose does not *ipso facto* justify a classification made for another purpose; each classification must be measured by its relation to the alleged governmental purpose." *Id.* at 474.

> In determining whether or not a particular classification is or not sustainable under such firmly settled principles of the law applicable to the subject courts look to and consider the alleged differential facts put forward as supporting the classification, and if it is found that there is no practical difference, and that by reason thereof the classification is arbitrary, it then becomes the duty of the court to so declare and to hold the contested enactment as invalid because invading the equal rights clause and others of either the Federal or State Constitutions, or of both. Not only so, but it has more than once in later times been observed by this and other courts that the practice of classification is frequently attempted to be exercised and applied in contravention of the settled requirement, supra, and to such an extent as to be plainly arbitrary and unsupported by either logic or reason.

*Burrow*, 145 S.W.2d at 1070-71. The differing treatment quoted by the Commonwealth as justification for this legislation again deals with the difference

in the particular *employees* and their specific job duties, not the *labor organizations* to which they may belong.

The exemption contained in KRS 336.180(10) (Section 1(10) of SB 7) violates the equal protection guarantee embodied in Sections 1, 2, and 3 of the Kentucky Constitution. Having reached the same result as the circuit courts on this controlling issue, we will not make rulings on other constitutional problems raised with but not decided by the circuit courts.

### THE INJUNCTIONS ARE OVERLY BROAD AND VAGUE

The circuit courts enjoined SB 7 without specifying who was enjoined. Injunctions are directed to individuals not laws. Although the Commonwealth is a party to these cases, this does not excuse some specification of who is enjoined. *Commonwealth v. Mountain Truckers Ass'n, Inc.*, 683 S.W.2d 260, 263 (Ky. App. 1984). *See also Akers v. Floyd County Fiscal Court*, 556 S.W.2d 146 (Ky. 1977).

CR[17] 65.02 is designed to govern the proper formulation of an injunction. An injunction may be applied to the named parties but extends to those who act for or with the parties when informed of the injunction. The broadening effect of CR 65.02 does not excuse the naming of the parties actually enjoined and the acts prohibited. For example, Secretary Link agreed to be bound by the

---

[17] Kentucky Rules of Civil Procedure.

-32-

decision. He and those acting for and with him could be enjoined from discontinuing payroll deductions under SB 7.

This brings us finally back to the Superintendent. It was not necessary for him to be a party to this suit. Secretary Link had been named and promised to comply with a final decision. As we previously indicated, people will be impacted without being named in a suit when constitutionality is in question. When a final decision making such a determination occurs, the unconstitutional part of the law is null and void *ab initio*. *Legislative Research Comm'n v. Fischer*, 366 S.W.3d 905, 917 (Ky. 2012).

It would be highly questionable, if not actionable, for any official, even if not a party to a suit directly addressing constitutionality, to enforce an unconstitutional law upon learning of that conclusion. Because of our conclusions about the constitutionality of SB 7, it is appropriate to remand these cases to the circuit courts to modify the terms of the injunctions entered consistent with *Mountain Truckers*, *supra*.

## CONCLUSION

We REVERSE the Franklin Circuit Court's finding that it is the proper venue for an action against the Superintendent in Case No. 2023-CA-1194. We AFFIRM the conclusions of the Franklin and Jefferson Circuit Courts that the exemption of some labor organizations in SB 7 is an unconstitutional violation of

-33-

equal protection of the law. We REMAND both Case No. 2023-CA-1025 and Case No. 2024-CA-0462 only to modify the injunctions to specify the application of the injunctions to those parties called upon to enforce the law and the actions enjoined.

ALL CONCUR.

BRIEFS FOR APPELLANT
COMMONWEALTH OF
KENTUCKY:

Matthew F. Kuhn
Solicitor General
Daniel J. Grabowski
Assistant Solicitor General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT COMMONWEALTH
OF KENTUCKY:

John Heyburn
Frankfort, Kentucky

BRIEFS FOR CROSS-APPELLANT
DOUG BECHANAN:

Grant R. Chenoweth
Jonathan C. Shaw
Paintsville, Kentucky

ORAL ARGUMENT FOR CROSS-
APPELLANT DOUG BECHANAN:

Grant R. Chenoweth

BRIEFS AND ORAL ARGUMENT
FOR APPELLEES KENTUCKY
EDUCATION ASSOCIATION AND
NICHOLAS COUNTY EDUCATION
ASSOCIATION:

Amy D. Cubbage
Marc G. Farris
Louisville, Kentucky

Alice O'Brien
Jeffrey W. Burritt
Washington, DC

BRIEF FOR APPELLEES
SAULETTE DAVIS,
INDIVIDUALLY AND AS
REPRESENTATIVE
RESPECTIVELY OF THE
AMERICAN FEDERATION OF
STATE, COUNTY & MUNICIPAL
EMPLOYEES LOCAL 2629, AFL-
CIO; JOHN STOVALL, AS
REPRESENTATIVE OF THE
INTERNATIONAL
BROTHERHOOD OF TEAMSTERS
LOCAL UNION 738; ED DEVINE,
AS REPRESENTATIVE OF THE
INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL UNION 369:

Peter J. Jannace
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES SAULETTE DAVIS,
INDIVIDUALLY AND AS
REPRESENTATIVE
RESPECTIVELY OF THE

-35-

AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES LOCAL 2629, AFL-CIO; JOHN STOVALL, AS REPRESENTATIVE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION 738; ED DEVINE, AS REPRESENTATIVE OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION 369:

Matthew Blumin
Washington, DC